J-S14041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW SCOTT DIEHL, | |
| Appellant | No. 258 MDA 2015 |

Appeal from the Judgment of Sentence December 23, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003909-2013

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 08, 2016**

Appellant Matthew Scott Diehl ("Appellant") appeals from the judgment of sentence of 9½ to 19 years' imprisonment after a jury convicted him of Homicide by Vehicle while DUI, Homicide by Vehicle, Accidents Involving Death or Personal Injury, DUI General Impairment 3rd, Duty of Driver in Emergency Response Area, and DUI High Rate 3rd.[1] Appellant was found not guilty of Third Degree Murder.[2]  He contends the trial court erred when it allowed the Commonwealth to introduce evidence of his 2005 DUI conviction and alcohol awareness classes as evidence of malice in support of the Third Degree Murder charge, and he argues that the

_____

[1] 75 Pa.C.S.A. §§ 3735, 3732, 3742, 3802(a), 3327, 3802(b), respectively.
[2] 18 Pa.C.S.A. § 2502(c).

*Former Justice specially assigned to the Superior Court.

imposition of consecutive sentences represented an abuse of sentencing discretion. We affirm.

The following evidence was adduced at Appellant's criminal trial. At approximately 12:40 a.m. on April 27, 2013, Fire Chief Rodney Miller of the Loganville Fire Department had begun closing the southbound lanes of I-83 between the Glen Rock and Shrewsbury exits to allow for an emergency life-flight helicopter landing at the scene of a motor vehicle collision further south on the highway. In an effort to divert traffic, Chief Miller parked his Fire Chief's pick-up truck diagonally across both lanes. The truck was equipped with a 360-degree oscillating overhead emergency light on the roof in compliance with Motor Vehicle Code requirements for emergency response vehicles, and Chief Miller had activated side marking lights, rear taillights, and the oscillating red lights on the roof. N.T. 11/17/14 at 328, 567-68. Chief Miller was also wearing a reflective turncoat as he prepared the roadblock. *Id.* at 56.

Matthew Hopkins was driving southbound on the interstate that night. As he crested a hill about one-half mile before the Glen Rock exit, he could see flashing lights near the exit. Assuming there was a problem near the right shoulder, he first moved from the right lane into the left lane, but as he drew within about 300 yards he was able to see a large pickup truck with red flashing lights positioned across the left lane and partially into the right lane. *Id.* at 176-77, 206-07.

At that point, Hopkins decelerated from his approximately 70 miles-per-hour rate of travel and turned on his four-way flashers as he tried to ascertain the situation ahead. *Id.* at 175-77. By the time he was about 50 yards away, Hopkins was coasting at five to ten miles per hour and could clearly see the large pick-up truck with the red flashing lights on the roof. He also had no difficulty seeing that a person was coming out from behind the pick-up and heading toward the right shoulder of the highway. *Id.* at 178-79. In describing visibility at the scene, he noted both an absence of any glare from oncoming traffic, as there were no vehicles traveling on northbound Interstate 83 at the moment, and the presence of a full moon. *Id.* at 200-01.

At the time he saw a person attempting to cross the right lane, Hopkins also saw that an SUV had passed him to the right at a speed he estimated to be 50 miles per hour. *Id.* at 175. As the SUV went by the Fire Chief's truck, the right side of its front end struck the person at the shoulder of the highway, Hopkins said, propelling him some 20 feet high in the air before he landed at the side of the highway. The SUV continued driving, and Hopkins immediately pulled his vehicle to the side of the road and called 911 for emergency assistance.

Volunteer Firefighter Zach Immel of the Glen Rock Fire Department had responded to the motor vehicle collision further southbound on I-83 and was assigned the task of traffic control at that accident site. *Id.* at 226-27. Standing near a rescue truck used to stop traffic, Immel noticed a white

Chevy Trailblazer with heavy front-end damage, including leaking, smoking, and "spidering" of the windshield. *Id.* at 227, 229. He first asked the driver, Appellant, if he was okay and then asked what happened. Appellant replied that he had hit a deer and was going to go home and call his insurance company in the morning. *Id.* at 228. To Immel, Appellant looked confident in telling his story and asking when the highway would open again. *Id.* at 231.

By this time, two or three other drivers had stopped behind Appellant's car, and they informed Immel that a pedestrian had been struck back at the Glen Rock exit and was lying on the side of the road. *Id.* at 233. Immel advised his assistant chief of the news and they sent out a dispatch for the state police to investigate Appellant's SUV. *Id.* at 235. When Immel subsequently returned to Appellant's car and advised him of the other drivers' report, he noticed a sudden change in Appellant's demeanor. Appellant now looked scared, asked whether he could have hit the pedestrian, and kept repeating that he thought he had hit a deer. *Id.* at 234. Appellant nervously got out of his car and lit a cigarette while pacing back and forth. *Id.* at 236.

Pennsylvania State Trooper Jonathan Confer had been dispatched in response to Matthew Hopkins' 911 call and was already at the accident scene involving Chief Miller when he received another dispatch informing that a suspect in the Miller accident was stopped at the accident scene two miles south on I-83. *Id.* at 268. Trooper Confer arrived several minutes

- 4 -

later and asked Appellant how he damaged his SUV. Appellant explained that he was traveling in the left lane I-83 South and moved into the right lane after the car ahead of him activated its four-way flashers. *Id.* at 271. As he entered the right lane very near the Glen Rock exit he thought he struck a deer, although he told Trooper Confer he was not sure now. *Id.* He related that the deer came from the left side, crossed over in front of his vehicle, and then struck it. *Id.* When the trooper asked why he did not stop, Appellant gave no definitive answer. *Id.* at 275. Appellant also told the trooper that he was going about 55 miles an hour at the time. *Id.*[3]

During the interview, Trooper Confer detected the odor of alcohol on Appellant, as well as bloodshot and glassy eyes. *Id.* at 276-77. Appellant admitted to drinking three beers and a shot of liquor earlier that night. *Id.* at 277. The trooper administered field sobriety tests including a walking phase, in which the trooper recorded that Appellant started too soon and made an improper turn but had otherwise performed cleanly, and a one-leg stand, in which no signs of impairment were recorded. *Id.* at 302-03. In another section of the test sheet, Trooper Confer had recorded that Appellant was crying at some point during the test. *Id.* at 304. Yet, under the "attitude" section of the test sheet, the trooper checked "other" because,

_____

[3] The trooper suspected Appellant was simply tailoring his answer to what he believed the posted speed limit to be. In fact, the trooper explained at trial, the posted limit on that part of Interstate 83 South was 65 miles per hour.

in his opinion, Appellant did not "seem to be too concerned with the incident itself, as far as learning that he possibly hit someone. He didn't seem like he was too concerned about it." *Id.* at 314.

Trooper Confer arrested Appellant and Pennsylvania State Police Troopers Benjamin Eaken and Jordan Geisler transported him for a blood draw, which was performed at 1:56 a.m. *Id.* at 278, 396-98. The test revealed a .118 BAC. *Id.* at 514. After Appellant returned to the York Barracks, Pennsylvania State Trooper Jeffrey Gotwals of the Criminal Investigation Unit interviewed him at about 2:43 a.m. *Id.* at 472-73, 494. Trooper Gotwals initially observed Appellant to be very upset and crying, and he believed Appellant was under the influence of alcohol, although not to the degree where it impaired his ability to understand his *Miranda* rights, which Appellant elected to waive. *Id.* at 474, 495. Using a diagram of the highway, Appellant indicated to Trooper Gotwals how he moved into the right lane because the car in front of him had activated its flashers and parked in the left lane. *Id.* at 481-82. It was then that he struck a deer running across the highway, Appellant said. *Id.* at 482. At no point did Appellant state that he saw the Fire Chief's truck. *Id.*

In Trooper Gotwals' view, Appellant became increasingly upset as the interview progressed and expressed concern about what had happened to "the gentleman," asking if there was any word on his condition. *Id.* at 499. It was at this point Appellant acknowledged that he hit a person rather than a deer, although Trooper Gotwals conceded that the admission could have

- 6 -

resulted from everyone telling him he had hit a person. *Id.* at 500. In this respect, the trooper also confirmed that Appellant never went so far as to admit he had been lying about the deer all along. *Id.*

Forensic investigation of the accident scene and Appellant's SUV confirmed that Appellant struck Chief Miller. *Id.* at 569. To have done so without also striking the chief's truck, which had been parked in such a way as to extend about 5.5 feet into the right lane, would have required Appellant to drive his right-side tires about two feet across the fog line and onto the berm of the highway, investigators deduced. It followed that Chief Miller had reached the berm of the road before he was hit. *Id.* at 610-11. Upon impact, Chief Miller's body travelled over a 133-foot distance, during which he struck a metal pole at the base of the exit sign with enough force to cause his flannel shirt and reflective turncoat to come off. *Id.* at 577-78, 613. Based on this distance, investigators calculated Appellant's speed at anywhere from 41 to 59 miles per hour at the moment of impact. *Id.* at 620. There was no evidence of tire marks at the scene indicating braking or hard swerving on Appellant's part. *Id.* at 614-15.

A forensic engineer with expertise in collision reconstruction testified while showing a video taken from what would have been Appellant's perspective as he approached Chief Miller's roadblock. *Id.* at 675-707. Operating under the same conditions that existed on the night in question, the expert indicated he was able to see the overhead oscillating red light from the crest of the highway about 3,000 feet away. *Id.* at 700. At about

2,000 feet away, he could see the light sat atop a pick-up truck, and he was also able to discern the truck's side marker lights, headlights, taillights, and lights flashing on the concrete wall barricade. *Id.* From 300 feet, he could see the structure of the truck. *Id.* The expert also found that the topography of the highway would not have degraded Appellant's visibility. *Id.* at 701-02. He opined, therefore, that a reasonable driver traveling south at the point of the emergency response zone where Chief Miller's truck was parked would have seen enough information well in advance to know the truck was across the highway, activate high beams, slow down, and stop to find out whether it was safe to proceed. *Id.* at 707.

Prior to trial, the Commonwealth filed a Motion *in Limine* on May 2, 2014, seeking to introduce evidence of Appellant's 2005 and 2007 DUI convictions and alcohol awareness education classes. The trial court provides an apt summary of its ruling allowing evidence of the 2005 DUI conviction and classes:

> We held a hearing on this issue, and others, on October 20, 2014. Specifically, the Commonwealth sought to introduce a DUI conviction from 2005 in Pennsylvania, a DUI conviction from 2007 in Maryland, and various summary traffic offenses from 2001. In addition to the convictions, the Commonwealth also requested to present testimony explaining the underlying facts of those convictions.
> With respect to the 2005 Pennsylvania DUI, the Appellant pleaded guilty to a DUI first offense on February 13, 2006. As the Commonwealth argued at the October 20th hearing, the facts from that DUI were similar to the present DUI in that it involved the Appellant leaving the scene of an accident. As a result, the Appellant was sentenced to 72 hours to 6 months imprisonment and ordered to take DUI awareness classes.

The 2007 Maryland DUI was factually different in that it was a standard traffic stop which resulted in the officer's suspicion that the Appellant was under the influence of alcohol. The Commonwealth was not in possession of anything stating that the Appellant had received classes as a result of that conviction.

At the October 20th hearing, defense counsel argued that admitting the Appellant's prior DUI convictions would lead the jury to convict based on those prior DUI's and not the facts in the present case; in other words, the probative value would not be outweighed by the prejudice to the Appellant. The Commonwealth argued that the prior DUI convictions should be admitted because it shows the Appellant took DUI education classes on the dangers of drinking and driving. This according to the Commonwealth, goes to show the Appellant's intent and/or malice. As previously mentioned, the Commonwealth sought to admit not only the Appellant's DUI convictions, but also the underlying facts giving rise to those DUI's.

We ultimately decided to allow the Commonwealth to present evidence of the 2005 Pennsylvania DUI conviction, but only to the extent it showed the Appellant took classes focused on the dangers of drinking and driving. We specifically stated, "[t]he Commonwealth will be precluded from going into the details of that particular crash, as well as the 2007 DUI in Maryland." We also concluded that the Commonwealth would not be permitted to introduce any evidence relating to the various summary traffic offenses [which related to prior automobile accidents].

At the Appellant's trial, the Commonwealth and defense entered into stipulations regarding the Appellant's 2005 DUI conviction and subsequent DUI education classes. The first stipulation stated that the Appellant pleaded guilty in 2006 to a DUI. The second stipulation stated that the Appellant received and attended four DUI education classes as a result of that conviction. Specifically, the classes the Appellant attended included materials about "the effect of alcohol on various parts of the body and specifically on different parts of the brain. They also addressed the impact of alcohol consumption on judgment, perception, and driving behavior."

Trial Court Opinion, June 4, 2015, at 11-13.

As noted above, trial ended with a jury verdict of not guilty on the count of Third Degree Murder, but guilty verdicts on Homicide by Vehicle-DUI and all other counts. At sentencing, the trial court elected to run Appellant's sentences consecutively, citing the failure of previous rehabilitative measures offered after prior DUI convictions and denying that the offenses arose from the same act. This timely appeal followed.

Appellant presents for our review two issues initially raised in his timely Pa.R.A.P. 1925(b) statement:

1. Whether the trial court erred in admitting Appellant's 2005 DUI conviction and subsequent DUI treatment, including alcohol influence awareness courses, pursuant to Pa.R.E. 404 as such evidence was more prejudicial than probative under the circumstances and facts of this particular case?

2. Whether the trial court abused its discretion when sentencing Appellant to consecutive sentences on the Homicide by Vehicle, Homicide by Vehicle while DUI, and Accidents Involving Death or Personal Injury when the conduct giving rise to those convictions was based on a single course of conduct and such consecutive sentences were inappropriate under the circumstances?

Appellant's brief at 6.

In reviewing Appellant's claim, we adhere to the following standards:

With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record.

*Commonwealth v. Flamer*, 53 A.3d 82, 86 (Pa.Super. 2012) (internal citations and quotation marks omitted).

"Under the Pennsylvania Rules of Evidence, evidence of other bad acts or crimes that are not currently being prosecuted against the defendant are not admissible against the defendant to show his bad character or propensity to commit criminal acts." *Id.* at 87 (citing Pa.R.E. 404(b)). "However, evidence of other crimes may be admissible where that evidence is used for some other purpose." *Id.* Such purposes explicitly include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2). *See Commonwealth v. Johnson*, 615 Pa. 354, 372, 42 A.3d 1017, 1027 (2012) ("Prior acts are admissible to show ill will, motive, *malice*, or the nature of the relationship between the defendant and the decedent.")(emphasis added).

"However, admission for these purposes is allowable only whenever the probative value of the evidence exceeds its potential for prejudice. Pa.R.E. 404(b)(3)." *Commonwealth v. Briggs*, 608 Pa. 430, 505, 12 A.3d 291, 337 (2011).

> In conducting the probative value/prejudice balancing test, courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility." *McCormick, Evidence* § 190 at 811 (4th ed.1992). *See also Commonwealth v. Frank*, 395 Pa.Super. 412, 577 A.2d 609 (1990) (enumerating balancing

test factors, including ability for limiting instruction to reduce prejudice).

***Commonwealth v. Kinard***, 95 A.3d 279, 286 (Pa.Super. 2014) (quoting

***Commonwealth v. Weakley***, 972 A.2d 1182, 1191 (Pa.Super. 2009)).

The admission of evidence becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. ***Commonwealth v. Sherwood***, 603 Pa. 92, 114-16, 982 A.2d 483, 496-98 (2009) (internal quotation marks and citation omitted).

Here, the trial court deemed the 2005 DUI conviction and education evidence relevant and admissible to prove malice, criminal negligence, and recklessness by showing Appellant disregarded the specialized knowledge he had acquired regarding the increased risk of danger that drinking after driving poses. Appellant contends, however, that the admission was more prejudicial than probative because it diverted the jury's attention away from what should have been the pivotal question of whether his collision with Chief Miller was the unavoidable product of confusing circumstances beyond his control or, instead, a result caused by his DUI. The evidentiary ruling, Appellant maintains, allowed the Commonwealth to "'negate any lesser or innocent degrees of intent' through the use of prior convictions[.]" Appellant's brief at 19. The gist of Appellant's argument, therefore, is that allowing the jury to consider whether Appellant "should have known better" because of his past DUI conviction and education unfairly negated the

possibility that the jury would find he acted with mere ordinary negligence or without culpability altogether.

The Commonwealth responds that the other crimes evidence was admissible under the exceptions regarding knowledge and intent (malice), as well as absence of mistake or accident. "More specifically, . . . the aforementioned evidence established that [Appellant] had specific knowledge, experience and training concerning the risks of driving while impaired, and [Appellant] chose to consciously disregard those risks, thereby demonstrating [Appellant] acted with malice and an absence of mistake or accident." Appellant's brief at 38-39.

To support its position, the Commonwealth cites to the nearly unanimous opinion among extra-jurisdictional decisions that prior DUI offenses and DUI education programs are admissible to establish the *mens rea* of third-degree murder or vehicular homicide. For example, in **United States v. Tan**, 254 F.3d 1204 (10th Cir. 2001), the Tenth Circuit Court of Appeals deemed admissible the defendant's seven prior DUI convictions spanning 14 years before the DUI-related fatal collision at issue. In reversing the district court, the circuit court balanced the probative value against the prejudicial effect of such evidence and discerned a heightened probative value given the lack of other evidence of malice. Particularly supportive of its opinion in favor of admission, the court determined, was the relatively greater need for the Rule 404(b) evidence in its case than

existed in other circuit court cases in which admission was granted even though other evidence of malice was introduced at trial:

> The district court also distinguished cases from the Fourth and Ninth Circuits in which the admission of prior drunk driving convictions was upheld for the purposes of proving malice in second degree murder prosecutions. In *United States v. Fleming*, 739 F.2d 945 (4th Cir. 1984), the highly intoxicated defendant, while fleeing from police in his vehicle, drove in an extremely reckless manner, eventually striking a car in the oncoming lanes and killing its driver. *Id.* at 947. The district court permitted the introduction of the defendant's driving record which showed several previous drunk driving convictions. The Fourth Circuit upheld the admission of that evidence:

>> The driving record would not have been admissible to show that defendant had a propensity to drive while drunk. Fed.R.Evid. 404(b). However, the driving record was relevant to establish that defendant had grounds to be aware of the risk his drinking and driving while intoxicated presented to others. It thus was properly admitted.

> *Id.* at 949.

> In *United States v. Loera*, 923 F.2d 725 (9th Cir. 1991), the inebriated defendant also drove in an extremely reckless manner prior to striking his victims. He was charged, as is Defendant here, with one count of second degree murder and one count of assault resulting in serious bodily injury. *Id.* at 726. As in *Fleming*, the district court in *Loera* admitted the defendant's driving record which revealed his past drunk driving convictions. On appeal, the Ninth Circuit summarily stated that "[t]he prior convictions were properly admitted to establish the element of malice required for the proof of second-degree murder." *Id.* at 729.

> The district court in this case distinguished *Fleming*, and by implication, *Loera*, on the ground that "in addition to being intoxicated, the defendant drove in a manner indicating depraved disregard for human life." Order at 5. In other words, the jury could infer malice in those cases from the defendants' actions immediately prior to the fatal accidents. Distinguishing

*Fleming* and *Loera* from the instant case on that basis, however, cuts against, rather than supports, the district court's exclusionary ruling. If malice could be inferred from evidence other than prior drunk driving convictions, then the probative value of those prior convictions was greatly reduced. The fact that the courts in *Fleming* and *Loera* admitted the prior convictions to prove malice despite their reduced probative value supports the admission of that kind of evidence in this case where its probative value is high due to the lack of other evidence of malice. Most significantly for Rule 404(b) purposes, neither the *Fleming* nor the *Loera* court found the prior drunk driving convictions to be offered for the improper purpose of proving character to show action in conformity therewith.

…

A jury could infer from Defendant's prior drunk driving convictions that he is especially aware of the problems and risks associated with drunk driving. We agree that "[o]ne who drives a vehicle while under the influence after having been convicted of that offense knows *better than most* that his conduct is not only illegal, but entails a substantial risk of harm to himself and others." [*People v.* ]*Brogna*, [202 Cal.App.3d 700,] 248 Cal.Rptr. [761, ]766–67 [(1988)] (criminal act underlying vehicular murder is driving under the influence with conscious disregard for life and prior convictions are probative of that mental state since those who drink and drive after being convicted of that offense know better than most of the illegality and danger of their conduct).

*Tan*, 254 F.3d at 1209-10. *Accord U.S. v. New*, 491 F.3d 369 (8th Cir. 2007); *State v. Jones*, 773 S.E.2d 170 (Ga. 2015); *State v. Maready*, 669 S.E.2d 564 (N.C. 2008) (holding prior DUI convictions admissible to establish malice); *Jeffries v. State*, 169 P.3d 913 (2007) (holding evidence of prior DUI convictions and refusal to participate in classes highly probative indirect evidence of mental state by showing heightened awareness of the risks of defendant's actions); *State v. St. Clair*, 67 P.3d 779 (Haw. 2003);

*Morehead v. State*, 638 A.2d 52 (Del. 1994) (admission of two and six year-old DUI convictions upheld as probative, and not unfairly prejudicial, of intent); *People v. Kenny*, 175 A.D.2d 404, 572 N.Y.S2d 102 (1991) (holding probative value of prior DUI conviction and education evidence outweighed prejudicial effect, even where other evidence of recklessness--.17% BAC, driving 73 mph in a 45 mph zone during medium to heavy traffic, and uncooperative attitude at scene—existed). *But Cf. Brown v. State*, 547 A.2d 1099 (Md. App. 1988) (holding evidence of past DUI and participation in DUI education classes inadmissible as impeachment evidence).

The reasons relied upon by other jurisdictions to admit prior DUI convictions and education classes as inferential evidence of a driver's state of mind are compelling when applied in the case *sub judice*. At trial, the alternative proof of malice was of uncertain efficacy, as evidence that Appellant disregarded an obvious emergency situation and failed to stop after his involvement in a serious collision was potentially dampened by his subsequent expressions of confusion, remorse, and concern, as well as by his willingness to cooperate fully with investigators. This conflict within the evidence enhanced the need for and potency of the rule 404(b) evidence as a means to infer Appellant's state of mind leading up to and including the time of the accident. His past experience with DUI and leaving the scene of an accident, and the special instruction he received on the dangers of

drinking and driving were, therefore, highly probative to the question of whether he, more than the typical driver, knew better than to drink and drive and to leave the scene of any accident.

The trial court tempered any potential for unfair prejudice by instructing the jury that the evidence was admitted for the "very limited purpose" of "tending to show what the Defendant's knowledge was of the hazards of drinking and driving. The evidence must not be considered by you in any other way other than for the purpose that I just stated." N.T. at 1000. Moreover, the acquittal of Appellant on the most serious count of third-degree murder is inconsistent with the notion that the Rule 404(b) evidence instilled within the jury a fixed hostility and bias against Appellant that rendered it incapable of basing its verdict on a fair assessment of the evidence. Accordingly, concluding that the probative value of Appellant's 2005 DUI conviction and participation in DUI classes exceeded its potential for prejudice, we discern no reversible error in the court's evidentiary ruling.

In Appellant's remaining issue, he charges the trial court with abusing its sentencing discretion in the imposition of consecutive sentences for Homicide by Vehicle, Homicide by Vehicle-DUI, and Accidents Involving Death or Personal Injury when the conduct giving rise to those convictions,

he maintains, was based on a single course of conduct.[4]  Prior to reaching

the merits of a discretionary aspects of sentencing issue, we conduct a four-

part analysis to determine whether a petition for permission to appeal should

be granted.  ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1039 (Pa.Super.

2014) (citation omitted).  Specifically, we must determine:

> (1) [W]hether appellant has filed a timely notice of appeal,
> Pa.R.A.P. 902, 903; (2) whether the issue was properly
> preserved at sentencing or in a motion to reconsider and modify
> sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a
> fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a
> substantial question that the sentence appealed from is not
> appropriate under the Sentencing Code, 42 [Pa.C.S.A.] §
> 9781(b).

***Id.***

The record reflects that Appellant filed a timely post-sentence motion

and a timely notice of appeal.  He also satisfies his obligation to include a

Rule 2119(f) statement in his brief.  ***See*** Appellant's Brief at 15.  The

Commonwealth, for its part, objects that Appellant's 2119(f) statement fails

to state a substantial question.  We therefore proceed to determine whether

Appellant raised a substantial question for our review.

_____

[4] Appellant challenges the imposition of consecutive sentences, not separate
sentences, for the three convictions.  As such, he does not contend that his
sentences for Homicide by Vehicle-DUI and Homicide by Vehicle convictions
should have merged, a position the Pennsylvania Supreme Court has, in any
event, rejected.  ***See Commonwealth v. Collins***, 564 Pa. 144, 145-46,
764 A.2d 1056, 1056 (2001) (holding Homicide by Vehicle and Homicide by
Vehicle-DUI do not merge for sentencing purposes).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa.Super. 2013) (citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa.Super. 2012).

In his petition for allowance of appeal, Appellant contends that sentencing consecutively based on the specific aspects of each offense "while virtually wholly ignoring that this was one incident which resulted in one death from a situation that had significant mitigating circumstances" was unreasonable under the circumstances. Appellant's brief, Section 2119(f) statement, at 15. "[A] defendant *may* raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not

raise a substantial question." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa.Super. 2013).

While Appellant's statement offers more than a bald claim of excessiveness, we disagree that his case involves circumstances in which imposition of consecutive, guideline range sentences would be clearly unreasonable. In this respect, we concur with the trial court's observations at sentencing that the course of events comprised distinct aspects of consciously drinking before driving, disregarding obvious signs of an emergent situation on the highway indicating a need for cautious driving, and proceeding away from the scene after a serious collision, which, taken together, placed this matter within the court's province to impose consecutive sentences. As Appellant's statement fails to address these points with any meaningful detail, we find it does not raise a substantial question.

Even assuming, *arguendo*, that Appellant's statement did raise a substantial question meriting our review, we would still find his claim affords him no relief. Specifically, the entirety of Appellant's argument consists of stating "the sentencing court failed to consider the nature and circumstances of the offense[s] when it sentenced [Appellant] to consecutive sentences[,] . . . [i]mposing consecutive sentences under these circumstances [involving a single course of conduct] seems to be a "volume mark-up[, and] [t]he sentencing court failed to consider that, despite [Appellant's] intoxication,

there were various factors that mitigate [Appellant's] intoxicated state." Appellant's brief at 24-25. We disagree. As we indicated *supra*, the sentencing transcript belies Appellant's claim that the court failed to consider the nature and circumstances of the offense. *See* N.T., Sentencing, at 45-46. Moreover, we reject Appellant's contention that mitigating circumstances were at play when he struck Chief Mller. While it is true that Mr. Hopkins did express he was uncertain from a half-mile away about what the flashing lights on the highway exactly indicated, he nevertheless acted with the appropriate level of caution and began to slow down and activate his four-way flashers. His conduct in this respect was that of the reasonable driver, according to the trial court, and we agree with this assessment. In contrast, Appellant failed to heed any of these obvious signals of danger and rushed through the scene at between 40 and 60 miles per hour. If anything, such circumstances were aggravating, not mitigating, in the sentencing context. Accordingly, we find no merit with Appellant's sentencing claim.

Judgment of sentence is AFFIRMED.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2016