J-A10001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERMAINE GRANT | : | |
| | : | |
| Appellant | : | No. 50 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011200-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERMAINE GRANT | : | |
| | : | |
| Appellant | : | No. 51 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011201-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERMAINE GRANT | : | |
| | : | |
| Appellant | : | No. 53 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-15-CR-0011202-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

|  | : |  |
| --- | --- | --- |
| v. | : | |
| | : | |
| | : | |
| JERMAINE GRANT | : | |
| | : | |
| Appellant | : | No. 54 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011204-2015

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE GRANT | : | |
| | : | |
| Appellant | : | No. 55 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000586-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE GRANT | : | |
| | : | |
| Appellant | : | No. 56 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000588-2016

BEFORE:   PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

---

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 18, 2024**

Jermaine Grant appeals from the judgments of sentence imposed following a jury trial in which he was found guilty of three counts of kidnapping, two counts of unlawful restraint, three counts of false imprisonment, carrying a weapon without a license, carrying a firearm on the streets of Philadelphia, possessing a firearm as a prohibited person, and four counts of victim intimidation.[1] The court correspondingly sentenced Grant to a total of twenty-and-one-half to forty-one years of incarceration to be followed by seventeen years of probation. On appeal, Grant challenges the discretionary aspects of his aggregate sentence, contests the sufficiency of evidence against him at the three kidnapping charges, and believes that several of the Commonwealth's statements during closing argument constituted prosecutorial misconduct. We find no merit to any of Grant's assertions and affirm.

As cogently summarized by the lower court:

[A]t approximately 6:45 p.m. on October 14, 2015, [Grant] approached his former girlfriend, Okina Thompson at her mother, Tonya Johnson's house, located at 1119 North 39th Street in Philadelphia. Ms. Thompson was walking with her two children, [] age five and [] three, outside of their house when Grant forced them into a van against their will and drove them around the city, ultimately ending up on Otter Street in the city. They were eventually freed.

---

[1] **See** 18 Pa.C.S. § 2901(a)(3); 18 Pa.C.S. § 2902(a)(1); 18 Pa.C.S. § 2903(a); 18 Pa.C.S. § 6106(a)(1); 18 Pa.C.S. § 6108; 18 Pa.C.S. § 6105(a)(1); and 18 Pa.C.S. § 4952, respectively.

Two days later, at approximately 2:30 a.m., Grant broke into Ms. Thompson's mother's house at 1119 North 39th Street, by removing a window air conditioner and breaking the window, while Ms. Thompson's eighteen-year-old brother, Marvin Johnson, was at home alone. Once inside, [Grant] forced Marvin Johnson, at point of gun, to get into his vehicle after repeatedly demanding to know where Ms. Thompson was. Grant then forced Ms. Thompson's mother at gunpoint to get into his vehicle when he spotted her walking up the street on her way home to check on Marvin, then drove them to Ms. Thompson's sister's house at 1730 North 25th Street, where Okina was staying that night. [Grant], at that point, used Ms. Thompson's mother to lure Okina out of her sister's house. When Whitney, Ms. Thompson's sister, answered the door, [Grant] pointed a gun at her, demanding to see Okina. When Ms. Thompson attempted to flee, Grant shot at her. Okina, scared of being murdered[,] returned to [Grant], who grabbed her and forced her into his vehicle. When Okina struggled, [Grant] bit her and threatened to kill her. Driving at an extremely high speed for several blocks, Grant ended up jumping over another car and struck a wall. [Grant] then ran from the scene but was apprehended by the police. Okina's injuries included a broken toe, a bite on her back and numerous bruises all over.

Somehow, while in police custody at the hospital where he was being treated, Grant was able to use a cell phone on October 17th, at which time he contacted Okina, threatening her and telling her not to come to court.

Trial Court Opinion, 5/8/23, at 4-6 (record citations omitted).

Grant was sentenced on October 6, 2017.[2] Grant subsequently filed a

_____

[2] Grant's sentence of incarceration consisted of five-and-one-half to eleven years on one kidnapping count, five to ten years on another kidnapping count, five to ten years for one of the counts of victim intimidation, and five to ten years for possessing a firearm as a prohibited person. Grant also received consecutive probationary sentences of ten years for the last kidnapping count, five years for carrying a weapon without a license, and two years for false imprisonment. No further sentence was imposed on the remaining counts.

timely post-sentence motion.[3] Grant did not file a direct appeal at this juncture.

In 2018, Grant filed a timely petition pursuant to the Post Conviction Relief Act. **See** 42 Pa.C.S. §§ 9541-9546. After several years of litigation, with various counsel working on his behalf and including a remand from this Court, Grant ultimately was permitted to pursue a *nunc pro tunc* direct appeal from his 2017 judgments of sentence, the appeal presently before this Court.

On appeal, Grant presents three issues for our review:

1. Did the sentencing court abuse its discretion by imposing what amounts to be an excessive sentence?

2. Was the evidence sufficient to sustain any of his kidnapping convictions?

3. Did the Commonwealth's statements during closing arguments constitute prosecutorial misconduct, in effect depriving him of a fair trial?

**See** Appellant's Brief, at 7.

Grant's first claim challenges the discretionary aspects of his aggregate sentence. Accordingly, in our preliminary review of such a claim, we utilize the following precepts:

> Challenges to the discretionary aspects of sentence are not appealable as of right. **Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the

---

[3] While Grant's post-sentence motion was only filed at the first of the six trial court dockets, CP-51-CR-0011200-2015, his motion lists all six docket numbers and the trial court's order was entered at all six dockets.

issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. *Id*. An appellant must satisfy all four requirements. ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013).

***Commonwealth v. Miller***, 275 A.3d 530, 534 (Pa. Super. 2022), ***appeal denied***, 302 A.3d 626 (Pa. 2023).

Through our review of the record, Grant has satisfied the first three jurisdictional prongs via his timely post-sentence motion, *nunc pro tunc* appeal, and Rule 2119(f) statement. Therefore, we must ascertain whether he has presented a substantial question.

This Court determines the existence of a substantial question on a case-by-case basis. ***See Commonwealth v. Diehl***, 140 A.3d 34, 44 (Pa. Super. 2016). However, a substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. ***See id***. at 45. Moreover, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists. ***See id***.

In his statement, Grant avers that the court reached an erroneous sentencing determination because it should have discounted, or possibly

ignored, his juvenile offenses in its ascertainment of his prior record score and instead focused on his adult prior record score consisting "entirely of misdemeanor offenses comprising two points." Appellant's Brief, at 16. Distilled down, Grant is arguing that the court, by including his juvenile offenses, failed to consider the lack of a "paternal figure in [Grant's] childhood, the presence of a stepfather who victimized and physical beat [Grant's] mother, the lack of a felony criminal history in [Grant's] adult life, and the fact that [Grant] has a history of unmedicated major depression and anxiety." *Id*. at 17.[4]

Although somewhat attenuated, it appears that Grant is arguing that the court failed to consider mitigating factors, leading to the imposition of an excessive sentence. This type of claim has been adjudicated to be a substantial

---

[4] Grant also asserts that he presented a substantial question based on the Commonwealth "continually referenc[ing] crimes for which [he] was acquitted as aggravating factors for consideration." Appellant's Brief, at 17. While this claim presents a substantial question, *see Commonwealth v. Smithton*, 631 A.2d 1053, 1055 n.1 (Pa. Super. 1993), we must deem this argument waived for lack of development. *See* Pa.R.A.P. 2119(a); *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014). Grant only briefly returns to this issue in one sentence of the argument section of his brief, *see* Appellant's Brief, at 21 (arguing that "allegations/charges" were repeatedly cited as aggravating factors at the sentencing hearing), and he does not indicate what specific improper evidence or which acquitted crimes the trial court considered. Moreover, his brief is devoid of any citations to the record or legal authority. Grant's failure to develop this argument in any meaningful fashion impedes our review where his trial involved multiple days of testimony by numerous witnesses, and he was convicted and acquitted of numerous charges spread across multiple trial court dockets. *See Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa. 2009) (single-sentence arguments without meaningful development issue or citation to authority are waived).

question. *See, e.g.*, *Commonwealth v. Raven*, 97 A.3d 1244, 1254 (Pa. Super. 2015) (stating that "[t]his Court has held that an excessive sentence claim–in conjunction with an assertion that the court failed to consider mitigating factors–raises a substantial question"). As such, we consider the merits of his discretionary aspects of sentencing claim.

We note our well-settled standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa. Super. 2022) (citation omitted). "[W]hen imposing sentence, the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Mulkin*, 228 A.3d 913, 917 (Pa. Super. 2020).

At sentencing, a court is required to consider both the particular circumstances of the offense and the character of the defendant. *See Commonwealth v. Taylor*, 277 A.3d 577, 593 (Pa. Super. 2022). Through consideration of these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. *See id*. However, when a pre-sentence investigation (PSI) report exists, we "presume that the sentencing judge was aware of relevant information

regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Conte***, 198 A.3d 1169, 1177 (Pa. Super. 2018). In other words, the very existence of a PSI report creates the presumption "that the court is aware of all appropriate sentencing factors and considerations, and where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citing ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988)).

Grant concedes that the PSI report contained all of the information that provides mitigating context to his childhood. ***See*** Appellant's Brief, at 21. Grant also notes that he was forty-six years old at sentencing, that he would not be eligible for parole until at least his mid-to-late sixties, and that none of the victims were seriously injured. ***See id***.

Grant provides no authority to vindicate his position that the purportedly mitigating evidence from his childhood should have been used to eliminate his juvenile acts of criminality from prior record score consideration. Even more importantly, however, Grant has failed to defeat the presumption that the court properly weighed all relevant information at sentencing. The information that Grant believes the court should have provided greater weight to was admittedly included in the PSI report that was before the court at sentencing, ***see*** N.T., 10/6/17, at 2 (lower court indicating that it reviewed the PSI report), and we are unable to find any manifest abuse of discretion from the sentencing

court. To the extent that Grant suggests that this Court should revisit the particularities of the PSI report, placing a higher emphasis on certain components, we note the well-settled precept that we may not "reweigh sentencing factors and impose judgment in place of the sentencing court where the lower court was fully aware of all mitigating factors." *Commonwealth v. Lawrence*, 313 A.3d 265, 286 (Pa. Super. 2024) (citation omitted and some formatting altered). Accordingly, Grant is due no relief on this claim.

In his second issue, Grant challenges the sufficiency of evidence at all three of his kidnapping convictions. Grant argues that the act of kidnapping requires the Commonwealth to prove, beyond a reasonable doubt, that Grant "moved the complainant a substantial distance in confinement, in a place of isolation, and that the confinement in isolation lasts a substantial period of time." Appellant's Brief, at 22. Grant suggests that the Commonwealth failed to meet its burden. Grant refers to two of the victims, Tonya and Marvin Johnson, being confined for "only a matter of minutes[.]" *Id*. at 23. And, as to the third victim, Okina Johnson, Grant argues that the confinement was for an insufficient amount of time and, too, not in a place of isolation. *See id*.

For challenges to the sufficiency of the evidence, we consider the following:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all

- 10 -

elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (citations omitted).

Generally speaking, "a person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with [one of four enumerated intentions]." 18 Pa.C.S. § 2901(a)(3). Grant has not challenged sufficiency as it pertains to whether the Commonwealth sufficiently demonstrated his illicit intent, but instead contests both the "substantial distance" and the "substantial period [of] isolation" elements. Preliminarily, we note that the statute includes the conjunction "or," meaning the crime of kidnapping can be satisfied through proof of either the former or the latter complained-of element.

This court has held that "substantial distance" does not exclusively mean linear distance. ***See In re T.G.***, 836 A.2d 1003, 1006 (Pa. Super. 2003). Instead, substantial distance can refer to the forced movement of a victim to "a completely different environmental setting removed from the security of

- 11 -

familiar surroundings[.]" *Id*. (citation omitted). In other words, "substantial distance" can refer to movement that "isolates the victim and exposes him or her to increased risk of harm." *Id*. (citation omitted).

As to what constitutes a "substantial period of isolation," we have held that the statute does not describe "geographic isolation, but rather effective isolation from the usual protections of society." *Id*. at 1008 (citation omitted). By way of example, "one's own apartment in the city can be a place of isolation, if detention is under the circumstances which make discovery or rescue unlikely." *Id*. (citation omitted) (cleaned up). As to duration, "approximately twenty minutes" has been established as enough time to constitute a "substantial period." *Id*. Our Supreme Court has further stated that "the determination of a substantial period subsumes not only the exact duration of confinement, but also whether the restraint, by its nature, was criminally significant in that it increased the risk of harm to the victim." ***Commonwealth v. Markman***, 916 A.2d 586, 600 (Pa. 2007) (holding that unspecified period when victim was left bound and gagged inside a trailer while perpetrators stepped outside to retrieve cigarettes, smoked them, and discussed what to do next was a "substantial period of isolation").

Here, viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient for the fact-finder to find *both* that Grant transported the victims a substantial distance and confined the victims for a substantial period of time in isolation, consistent with the

kidnapping statute. **See** N.T., 7/5/17, at 61-70 (Okina Thompson's testimony wherein she indicated that Grant had forced her, as well as her two children, into his vehicle, driving them around the city of Philadelphia for approximately ten to fifteen minutes, ending up multiple blocks away from where she had been compulsorily told and physically compelled to get into Grant's vehicle); N.T., 7/6/17, at 11-18 (Marvin Johnson's testimony establishing that Grant threatened him with a gun, requiring him to go with Grant by vehicle in search of Okina, who was in another part of Philadelphia at the time, but that on the way, Marvin's mother was spotted and threatened by Grant with a firearm to also get in Grant's vehicle); N.T., 7/6/17, at 37-41 (Tonya Johnson's testimony providing that Grant pulled a gun on her, required her to get into his vehicle, confiscated both her and Marvin's cell phones, and drove them for approximately twenty to twenty-five minutes).

Clearly, there was sufficient evidence for the jury to conclude that Grant unlawfully moved all three victims a substantial distance; Grant removed the three victims from the security of familiar surroundings, i.e., at or around their residence, and transported them some distance away from where they had been forced into his vehicle. Moreover, based on the evidence presented, the jury could conclude that Grant forced all three victims into a substantial period of isolation. Both incidents lasted ten or more minutes in length and, through Grant's physical force as well as use of a firearm, deprived the victims the normal societal protections inherent to their typical day-to-day existences

having been compelled to remain in the "cutoff" environment of Grant's vehicle for an indeterminate amount of time. As to the latter event, Grant additionally required Marvin and Tonya to hand over their cell phones, further evidencing that their discovery or rescue was all the more unlikely. Viewing the evidence in a light most favorable to the Commonwealth as winner of the three kidnapping verdicts, we find that the evidence was sufficient at all three counts.

At Grant's last claim, he maintains that the Commonwealth's closing argument contained prosecutorial misconduct given some of the comments that were made. While his trial counsel objected to eleven statements made during closing argument, all of which have been replicated in his brief, Grant acknowledges that seven of those objections were sustained. *See* Appellant's Brief, at 24. However, the cumulative effect of the Commonwealth's comments, Grant suggests, "deprived [him] of a fair trial." *Id.*

Grant enumerates the eleven objections made by his trial counsel and then summarily states that the Commonwealth: (1) made improper comments about the role of defense counsel, (2) erroneously bolstered the Commonwealth's witnesses, (3) made incorrect evidentiary comments, and (4) improperly shifted burdens onto him. *See id*. at 25-26. Grant believes that, notwithstanding the fact that most of his counsel's objections were sustained, these eleven comments "succeeded in prejudicing the jury against [him]." *Id*. at 26.

In reviewing a claim of improper prosecutorial comments, our standard of review is "whether the trial court abused its discretion." **Commonwealth v. Hall**, 701 A.2d 190, 198 (Pa. 1997). For particularized challenges to references in a closing statement,

> it is well[-]settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well[-]settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

**Commonwealth v. Jones**, 191 A.3d 830, 835–36 (Pa. Super. 2018), quoting **Commonwealth v. Jaynes**, 135 A.3d 606, 615 (Pa. Super. 2016) (quotation marks and citations omitted).

Having reviewed the eleven statements presented by Grant, we conclude that Grant has not established the existence of prosecutorial misconduct, much less warrant a new trial. First, we note that the trial court sustained Grant's objections to seven of the statements. **See** N.T., 7/10/17,

- 15 -

at 91, 101-02, 104, 111, 117. Grant sought a cautionary instruction after the last of his sustained objections regarding the fact that he bore no burden at trial, which the lower court provided, *see id*. at 117-18 ("Ladies and gentlemen, the defendant has no burden of proof. It is not his duty to explain. It is the Commonwealth's burden at all times."), but he did not seek any further instruction that the lower court refused, nor did he seek a mistrial. *See Commonwealth v. Arrington*, 86 A.3d 831, 853 (Pa. 2014) ("[I]t is the trial court's ruling on the defendant's objection to the prosecutor's allegedly improper statement that is reviewable on appeal, and not the prosecutor's underlying misconduct.").

With respect to the remaining four complained-of statements as to which Grant's objections were overruled, Grant only baldly claims that the prosecutor's "brazen and repeated" comments deprived him of a fair trial, Appellant's Brief, at 26, with no discussion of the specific objections, citation to legal authority, or analysis. Nevertheless, we discern no palpable abuse of discretion in the court's rulings. Two of the objections appear to be based on alleged shifting of the burden by the Commonwealth to the defense, *see* N.T., 7/10/17, at 93, 101 (arguing that "the defense's job is to deflect" and "they want to poke holes in everything"); while these appear to be merely fair response to arguments from the defense, any prejudice was alleviated when the trial court instructed the jury that the burden rests entirely with the Commonwealth, not Grant. *See id*. at 118; *see also Commonwealth v.*

*Smith*, 995 A.2d 1143, 1163 (Pa. 2010) ("The jury is presumed to follow the trial court's instructions."). Grant also objected to the prosecutor's argument that "[i]nnocent people don't do" what Grant did and call a victim to tell her not to appear in court. N.T., 7/10/17, at 91. We find that this objection was properly overruled as this statement was based on the trial testimony and was not personal vouching for the complainant's credibility. *See Commonwealth v. Burno*, 94 A.3d 956, 974-75 (Pa. 2014). Finally, Grant's objection to the prosecutor's statement that she "would never ask you to stand in Okina Thompson's shoes," N.T., 7/10/17, at 96, was properly overruled. This statement was a correct recitation of the law, and further, the prosecutor did not invite jurors to imagine themselves in Ms. Thompon's shoes but only asked them to appreciate her emotions as she interacted with Grant. *See id*. at 96-98; *Commonwealth v. Hutchison*, 164 A.3d 494, 500 (Pa. Super. 2017) (prosecutor may not invite jury to place themselves in victim's shoes but may refer to the feelings that the victim experiences).

With Grant having failed to establish any basis to either reverse the lower court or remand for further proceedings, we affirm his judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2024