J-S67039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SAMUEL MERRIWEATHER | |
| Appellant | No. 3013 EDA 2015 |

Appeal from the Judgment of Sentence October 24, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012832-2012

BEFORE: FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 04, 2016**

Appellant Samuel Merriweather appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after the trial court convicted Appellant of rape by forcible compulsion, involuntary sexual deviate intercourse ("IDSI") by forcible compulsion, sexual assault, indecent exposure, terroristic threats, indecent assault, simple assault, and recklessly endangering another person.[1] Appellant claims his convictions are not supported by sufficient evidence and argues that his aggregate sentence of 165 to 330 months imprisonment is excessive. We affirm.

_____

[1] 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 3124.1, 3127(a), 2706(a)(1), 3126(a)(1), 2701(a), and 2705, respectively.

*Former Justice specially assigned to the Superior Court.

The trial court aptly summarized the factual background of this case as follows:

1.  Rape of [D.D., (the victim)] in 2002

On December 1, 2002, [D.D.] went to the Kensington section of Philadelphia to purchase heroin. Upon obtaining the heroin, she entered an abandoned warehouse at the intersection of Somerset Street and Jasper Street to get high. To enter the warehouse, [D.D.] walked through a grass lot and up a set of metal steps to the second floor. The second floor was a large empty room with one entrance. She had been to the warehouse one time previous to this day. There was trash and debris scattered throughout the room. After getting high, [D.D.] went to a brick wall in a corner of the room to urinate.

While [D.D.] urinated, she noticed [Appellant] enter the room. [Appellant] was wearing a black ski cap, light blue jeans, and a blue one-piece jumpsuit over a hooded sweatshirt. [D.D.] asked him to turn around while she finished. [Appellant] ignored her request and walked rapidly toward her. [D.D.] became anxious, quickly pulled up her pants, and attempted to walk toward the door to exit the warehouse. Instead of leaving the warehouse, [Appellant] grabbed [D.D.] and pushed her face against the wall. [Appellant] told her to pull her pants down. He then forced her to have vaginal sex.

[D.D.] was afraid that [Appellant] would hurt her. She said, "I have two kids at home waiting for me." [Appellant] told her not to scream and that she would not be hurt as long as she complied with his demands. [Appellant] forced [D.D.] to her hands and knees, and then forced his penis into her anus. Next, he pushed [D.D.] onto her back and forced his penis into her vagina. [D.D.] told [Appellant] not to ejaculate in her vagina. He responded that he wanted to ejaculate in her mouth. [Appellant] continued to alternate between forcing his penis into her vagina and into her mouth. The assault lasted approximately 45 minutes. When [Appellant] was finished, he pulled up his pants and instructed [D.D.] to face the wall and not move until she could no longer hear him. [Appellant] then left the warehouse.

Once [D.D.] heard [Appellant] descend the metal steps, she pulled up her pants and exited the warehouse. She recognized a group of men outside the warehouse. One of the men stayed with her until she was able to locate a police officer. [D.D.] was transported to Episcopal Hospital where a rape kit was performed. [D.D.] was then taken to the Special Victims Unit where she provided a signed statement to Detective Mike O'Brien regarding the assault. More than ten years later, [D.D.] was able to positively identify [Appellant] during an in-person lineup.

At trial, [D.D.] testified that she never consented to sexual intercourse with [Appellant], and that she never made any deal with him to trade sex for money. She admitted that she formerly engaged in prostitution near a Kensington bar to earn money for drugs. During the trial, she was able to identify the blue jumpsuit recovered by police outside of the warehouse on the day of the incident, as well as pictures taken of the scene in 2002. On cross-examination, [D.D.] conceded that she did not notice any tattoos on [Appellant's] neck even though it was uncovered during the attack. She also conceded that she was unable to recognize [Appellant] in a photo array but was able to immediately identify him at the lineup. After looking at the other individuals in the lineup, she began to cry when she looked into [Appellant's] eyes, because she "felt like it was him." [She] acknowledged that she was poor at assessing one's height when asked about the inaccuracy of [Appellant's] height that she provided to Detective O'Brien in her original statement.

2. Testimony of Police Officer Michael Cahill And Detective Bill Urban.

On December 1, 2002, at approximately 10:30 am, Police Officer Michael Cahill and his partner were on routine patrol in the area of the 2700 block of Jasper Street when [D.D.] gained their attention. [D.D.] told Officer Cahill that she had just been raped inside the adjacent abandoned warehouse at Somerset and Jasper Street. Officer Cahill observed that [D.D.] was crying, seemed in shock, was "out of it," and "very shaken up." While searching the area for a suspect, Officer Cahill recovered a blue jumpsuit in the grass lot outside of the warehouse.

On October 22, 2012, Detective Bill Urban of the Special Victims Unit conducted a live eyewitness identification lineup.

- 3 -

While Detective Urban conducted the lineup, he observed that [D.D.] was shaking and crying. [D.D.] viewed each individual through a large window from approximately three feet away. As soon as Detective Urban returned to the room where [D.D.] was viewing the individuals, she immediately replied that [Appellant] "stood out to me." Detective Urban had [D.D.] sign a statement of her positive identification of [Appellant].

3. The Forensic Evidence Linking [Appellant] to The Rape of [D.D.]

Detective Daniel O'Malley of the Special Victims Unit is assigned to investigate long-term cold cases involving DNA. Acting on information received from the Combined DNA Index System ("CODIS") database, Detective O'Malley obtained a voluntary DNA sample from [Appellant]. The DNA sample collected from [Appellant] by Detective O'Malley matched the original rape kit performed on [D.D.] in 2002.

Greg Vanalstine testified as an expert in forensic DNA analysis. Based upon his review of certain samples from the rape kit performed on [D.D.] and a buccal swab from [Appellant], he testified, *inter alia*, that [Appellant] was the male source of the DNA mixture contained in the sperm fraction of the perianal swab.

4. [Appellant's] Testimony

At trial, [Appellant] testified that he knew [D.D.] from when she was a prostitute in Kensington. [Appellant] testified that he had sex with [D.D.] on three previous occasions, including one time at the warehouse and twice in his room above a bar on Somerset Street in Kensington. [Appellant] denied that he raped [D.D.] on December 1, 2002. He testified that each time he paid her for sex. On cross-examination, [Appellant] stated that in 2002 he lived on Mulberry Street in Frankford and would go to Kensington to look for girls. [Appellant] conceded that – in his statement following his arrest – he denied [knowing D.D.] and denied that he had sex with her in the abandoned warehouse.

Trial Court Opinion (T.C.O.), 12/14/15, at 1-5 (internal citations and footnotes omitted).

After Appellant was charged with the aforementioned offenses, he waived his right to a jury trial. On July 16, 2013, the trial court convicted Appellant of rape and the related offenses. On October 24, 2013, the trial court deemed Appellant a sexually violent predator and imposed three consecutive sentences: 78 to 156 months imprisonment for the rape conviction, 78 to 156 months imprisonment for the IDSI conviction, and 9 to 18 months for the terroristic threats conviction. The trial court imposed no further penalty on the remaining convictions. On November 1, 2013, Appellant filed a motion for reconsideration of sentence, which the trial court denied. Appellant did not file a direct appeal.

On April 30, 2014, Appellant filed a timely *pro se* PCRA petition, seeking the reinstatement of his direct appellate rights. On September 29, 2015, the PCRA court granted Appellant his requested relief without objection from the Commonwealth. The same day, Appellant filed this appeal and subsequently complied with the lower court's direction to submit a concise statement of errors complained of on appeal pursuant to Rule 1925(b).

Appellant first claims the evidence was insufficient to support his convictions. Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute

our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Britton***, 134 A.3d 83, 86 (Pa.Super. 2016).

In claiming that all of his convictions were supported by insufficient evidence, Appellant does not argue that the Commonwealth failed to prove any of the specific elements of the crimes charged, but contends that the trial court should have found the testimony of the victim, D.D., to be incredible and unreliable. Specifically, Appellant claims that his convictions cannot stand because the nearly ten-year period between the crime and his arrest was too attenuated and the victim's testimony was unreliable as she "was a heroin addict, who stole and was a prostitute." Appellant's Brief, at 10. Moreover, Appellant claims D.D.'s inability to correctly assess his height in giving her statement to police and her failure to identify Appellant initially in a photo array shows the inconsistency of her identification, notwithstanding that his DNA matched that from the victim's rape kit taken immediately after the crime.

- 6 -

It is well established that "[a]n argument regarding the credibility of a witness's testimony goes to the weight of the evidence, not the sufficiency of the evidence." *Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa.Super. 2014) (quoting *Commonwealth v. Gibbs*, 981 A.2d 274, 281–82 (Pa.Super. 2009)). Our Supreme Court has emphasized that an "appellant's challenge to the sufficiency of the evidence must fail" where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that appellant provides goes to the weight of the evidence. *Commonwealth v. Small*, 559 Pa. 423, 741 A.2d 666, 672 (1999); *see also Gibbs*, 981 A.2d at 281-82 (finding that a sufficiency claim raising weight of the evidence arguments would be dismissed).

To the extent that Appellant is raising a weight of the evidence claim, we find this argument to be waived by his failure to raise the issue before the trial court. "A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." *Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa.Super. 2013) (citing Pa.R.Crim.P. 607) (other citations omitted). As Appellant did not raise this claim at sentencing or in his motion to reconsider his sentence, the issue is waived on appeal.

Appellant also claims that the trial court abused its discretion in imposing an excessive sentence. "A challenge to the discretionary aspects

- 7 -

of sentencing does not entitle an appellant to review as of right."
***Commonwealth v. Bynum-Hamilton***, 135 A.3d 179, 184 (Pa.Super. 2016). In order to invoke this Court's jurisdiction to address such a challenge, the appellant must satisfy the following four-part test: the appellant must (1) file a timely notice of appeal pursuant to Pa.R.A.P. 902, 903; (2) preserve the issues at sentencing or in a timely post-sentence motion pursuant to Pa.R.Crim.P. 720; (3) ensure that the appellant's brief does not have a fatal defect as set forth in Pa.R.A.P. 2119(f); and (4) set forth a substantial question that the sentence appealed from is not appropriate under the Sentencing Code under 42 Pa.C.S. § 9781(b). ***Id***.

After reviewing the record, we find Appellant filed a timely post-sentence motion and a timely notice of appeal. He also satisfies his obligation to include a Rule 2119(f) statement in his brief and his appellate brief complies with our appellate rules. ***See*** Appellant's Brief at 12-13. We proceed to determine whether Appellant raised a substantial question for our review. With respect to this inquiry, this Court has held the following:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Edwards***, 71 A.3d 323, 330 (Pa.Super. 2013) (citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citations omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists."

> ***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa.Super. 2012).

***Commonwealth v. Diehl***, 140 A.3d 34, 44–45 (Pa.Super. 2016).

Specifically, Appellant alleges that the trial court abused its discretion in sentencing him when it overemphasized the protection of the public and did not consider Appellant's rehabilitative needs. Moreover, Appellant asserts that when this sentence is added to a consecutive sentence he is serving on a different unrelated docket, he has a cumulative minimum sentence of over thirty years imprisonment, which he characterizes as a life sentence.

In analyzing Appellant's claim that his sentence is excessive, we emphasize that:

> [a] defendant *may* raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Id*. at 45 (quoting ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa.Super. 2013)). To the extent that Appellant challenges the trial court's discretion to impose a sentence consecutive to another docket, we find Appellant's bald claim of excessiveness does not raise a substantial question.

However, Appellant's argument that the sentencing court failed to consider his rehabilitative needs while solely focusing on the protection of the public does raise a substantial question for our review. However, an

appellant's mere dissatisfaction with the sentencing court's weighing of sentencing considerations is not sufficient to raise a substantial question for our review. *See Commonwealth v. Moury*, 992 A.2d 162, 175 (Pa.Super. 2010) (noting that the appellant's allegation that the sentencing court "refused to weigh the proposed mitigating factors as Appellant wished, absent more, does not raise a substantial question").

Even assuming *arguendo* that Appellant had raised a substantial question for our review, his challenge to the trial court's sentencing discretion has no merit. Consistent with this finding, the trial court explained its rationale for its sentence as follows:

> [A]fter considering both mitigating and aggravating factors, the trial court sentenced [Appellant] to guideline sentences that ran consecutively for his convictions of rape, IDSI, and terroristic threats; the trial court imposed an aggregate sentence of 165 months to 330 months incarceration. In imposing the sentence, the trial court considered, *inter alia*, the report of the Sex Offender Assessment Board that classified [Appellant] as a sexually violent predator, [Appellant's] pre-sentence investigation (including his employment history and education), [Appellant's] mental health evaluation and treatment (including his history of drug and alcohol abuse), [Appellant's] prior unsuccessful court supervision as a juvenile, the sentencing memoranda submitted by [Appellant] and the Commonwealth, its opportunity to observe [Appellant] during the trial and sentencing hearing, counsel's arguments, observations of the victim as she testified, and [Appellant's] continued lack of remorse despite the verdict. The trial court also considered the particular factual circumstances of this crime, *i.e.*, that [Appellant] cornered the victim in an abandoned warehouse and threatened her with physical harm so that she would acquiesce to his prolonged sexual assault. Given all of these considerations, the trial court imposed a sentence that considered the protection of the public, the impact on the victim and the community, and [Appellant's] rehabilitative needs.

- 10 -

T.C.O. at 12-13 (footnote omitted).

In light of the foregoing, we conclude that the trial court properly exercised its discretion in fashioning Appellant's sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/4/2016