J-S38032-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SETH A. TRAVIS, | : | |
| | : | |
| Appellant | : | No.  1914 WDA 2017 |

Appeal from the Judgment of Sentence December 8, 2017
in the Court of Common Pleas of McKean County
Criminal Division, at No. CP-42-CR-0000219-2016

BEFORE:  BOWES, NICHOLS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   FILED: August 7, 2018

Seth A. Travis (Appellant) appeals from the judgment of sentence entered on December 8, 2017, following his jury convictions for rape, indecent assault, and simple assault.  Upon review, we affirm.

We offer the following factual summary based upon the testimony at trial.  On April 11, 2016, Appellant, who was 19 years old at the time, sent a Facebook friend request to T.V., who was 22 years old at the time.  T.V. accepted Appellant's friend request, and the two of them "started messaging back and forth," which led to their exchanging cell phone numbers and subsequent texting. N.T., 6/26/2017, at 60.  Appellant then met T.V. at her father's house around 11:00 p.m. that night, and the two walked to Appellant's house.  Appellant had told T.V. that his mother would be at the house, but when she got there, Appellant's mother was not home.  After

---

* Retired Senior Judge assigned to the Superior Court.

arriving, Appellant wanted to change clothes, and T.V. testified that she "was upstairs playing on [her] phone sitting on [Appellant's] bed." *Id*. T.V. then testified to the following.

> [Appellant] had then taken my phone and set it on the stand or somewhere next to his bed and then he had started kissing me and I was telling him "no" and trying to get him off me. He had grabbed [m]y hand and [] my hair and was fighting back with me holding me down so he could get my pants [] off…
>
> ***
>
> Then when he got them off he began to have sexual contact[1] with me and then when he was done I told him that I had to leave because I had to do laundry for work but he wanted me to stay. So I told him that my dad was coming to meet me and he then walked me downstairs so I could leave.

*Id*. at 60-61.

T.V. testified that she left Appellant's house and called her friend, Georgia Moore, to pick her up. T.V. and Moore went to Moore's house where T.V. explained what happened. T.V. and Appellant also exchanged text messages. T.V. texted to Appellant, "I told you **no** so many times and you didn't like that answer." *Id*. at 79 (emphasis added). Appellant responded, "Huh, and I didn't hear you say no." *Id*. at 80. T.V. texted, "I said it a million times when you were kissing on me and everything I told you I don't just … sleep with people." *Id*. Appellant responded, "I'm deaf in one ear and my other can hear some I'm sorry." *Id*.

---

[1] T.V. later testified that this meant that "[h]e put his penis in her vagina." *Id*. at 73.

Moore called T.V.'s stepmother who called police. Sergeant Raymond Douglas went to Moore's house, and then transported T.V. and Moore to the hospital. After being treated at the hospital, T.V. provided a statement to Sergeant Douglas. Sergeant Douglas interviewed Appellant the following morning, where he told police that he and T.V. had consensual sex the night before. Appellant also told police that "[h]e had trouble hearing sometimes." *Id*. at 143. Appellant was then arrested and charged in connection with this incident.

Prior to trial, counsel for Appellant filed a motion *in limine* to exclude evidence of Appellant's prior juvenile adjudication for sexual assault. That adjudication occurred in 2013, when Appellant was 16 years old, and involved 17-year-old victim, B.B. The trial court heard argument on this motion, and on June 19, 2017, the trial court denied Appellant's motion.

A jury trial was held on June 26 and 27, 2017. In addition to the testimony by T.V., the jury also heard testimony from Moore and the nurses who cared for T.V. at the hospital. Further, B.B. and Officer Steven Green, who interviewed Appellant about the incident with B.B., testified as permitted after Appellant's motion *in limine* had been denied.

B.B. told the jury that Appellant invited her over to his house for dinner. B.B. testified that her mother called Appellant's mother to make sure this was okay, and according to B.B., Appellant's mother said yes. Appellant and B.B. walked to Appellant's house, where his mother and grandmother were home.

The two went to Appellant's room, where Appellant proceeded to have sex with her. B.B. testified that she was screaming and trying to push him off. According to Appellant, if B.B. said "no," "he did not hear her." N.T., 6/27/2017, at 107.

The jury found Appellant guilty of all charges in connection with the rape of T.V. On December 8, 2017, Appellant was sentenced to an aggregate term of 7 to 14 years of incarceration. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that "the trial court erred by permitting the Commonwealth to introduce evidence at trial of Appellant's prior juvenile adjudication for sexual assault." Appellant's Brief at 4. We consider this issue mindful of the following.

> The admission or exclusion of evidence is a matter vested in the trial court's sound discretion, and we may reverse the court's ruling only upon a showing of a clear abuse of that discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law or an exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Our scope of review is limited to an examination of the trial court's stated reason for its decision.

***Commonwealth v. Wattley***, 880 A.2d 682, 685 (Pa. Super. 2005).

> Relevance is the threshold for admissibility of evidence. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

- 4 -

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403; *see Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012) (stating that even when evidence meets the relevance requirements, "such evidence may still be excluded where its probative value is outweighed by the danger of unfair prejudice[]").

> However, [e]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case.... This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

*Kouma*, 53 A.3d at 770 (citation omitted); *see* Pa.R.E. 403, cmt. (defining "unfair prejudice" as "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially[]").

*Commonwealth v. McCarthy*, 180 A.3d 368, 377 (Pa. Super. 2018) (some citations omitted).

Our rules provide further direction when the evidence relates specifically to other crimes, wrongs, or acts, such as a prior adjudication.

**(b) Other crimes, wrongs, or acts.**

> (1)   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

> (2)   Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

> (3)   Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a

> criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404 (b)(1)-(3). Further,

> while evidence of prior bad acts may be relevant and admissible, there is the potential for misunderstanding on the part of the jury when this type of evidence is admitted. This evidence must, therefore, be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted.

**Commonwealth v. Weiss**, 81 A.3d 767, 798 (Pa. 2013) (internal citations and quotation marks omitted). **See also Commonwealth v. Cousar**, 154 A.3d 287, 304 (Pa. 2017) (stating that "where evidence of a defendant's prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose").

Here, the trial court concluded that this case was analogous to **Commonwealth v. Tyson**, 119 A.3d 353 (Pa. Super. 2015) (*en banc*),[2] "as there is no issue of identity [of the perpetrator,] but evidence of the prior crime is permitted on the issue of 'mistake or accident' as to consent and also on the issue of 'common plan or scheme.'" Trial Court Order, 6/20/2017.

Despite the fact that the trial court permitted admission of this evidence pursuant to two different Pa.R.E. 404(b)(2) exceptions, the trial court provided a cautionary instruction as to the absence of mistake exception only. **See** N.T., 6/26/2017, at 104 (instructing the jury prior to Officer Green's testimony that this evidence may be considered only for the limited purpose

---

[2] This case will be discussed in detail *infra*.

of whether Appellant mistakenly believed that T.V. consented); N.T., 6/27/2017, at 39-40 (instructing the jury after the close of evidence that this evidence was to be used only to show that Appellant "did not mistakenly believe that [T.V.] gave consent" and that "must **not** be considered by [the jury] in **any** way than for the purpose [the trial court] just stated") (emphasis in original).

Based on the foregoing, it is apparent the evidence was admitted only pursuant to the absence of mistake exception. Thus, despite the fact that Appellant spends a significant portion of his brief arguing that the trial court erred in admitting this evidence pursuant to the common plan or scheme exception, **see** Appellant's Brief at 17-29, we will not consider that argument on appeal because that was not a basis for the admission of this evidence.

We now turn to the basis upon which this evidence was admitted, the absence of mistake exception. With respect to this exception, this Court has held that

> evidence may be admitted under the "absence of mistake or accident" exception where "the manner and circumstances" of two crimes are "remarkably similar." **Commonwealth v. Boczkowski**, [] 846 A.2d 75, 86 ([Pa.] 2004). In **Boczkowski**, our Supreme Court held that evidence related to the death of the defendant's first wife was admissible in the trial against him for the murder of his second wife, where both women died of drowning under very similar circumstances. **Id**. Our Supreme Court thus ruled that the evidence was relevant to prove that the second death was a homicide, rather than (as the defendant claimed) an accident.

**Commonwealth v. Kinard**, 95 A.3d 279, 294–95 (Pa. Super. 2014).

- 7 -

Here, the trial court concluded that the situation in this case is analogous to this Court's decision in **Tyson**, **supra**. The facts of **Tyson** are the following:

> On July 31, 2010, [the victim, G.B.,] left work because she felt ill after donating plasma. G.B. asked [Tyson], whom she knew casually, to bring her some food. [Tyson] arrived at G.B.'s apartment and stayed as she fell asleep. During the early morning hours of August 1, 2010, G.B. claims she awoke to find [Tyson] having vaginal intercourse with her. [Tyson] told G.B. she had taken her pants off for him. G.B. claims she told [Tyson] to stop, and he complied. After falling back asleep, G.B. woke again later that night and went into her kitchen, where she allegedly found [Tyson] naked. G.B. claims she told [Tyson] she did not want to have sex with him and returned to bed. Shortly thereafter, G.B. claims, she woke up; and [Tyson] was again having vaginal intercourse with her. G.B. told [Tyson] to stop and asked him what he was doing. [Tyson] told G.B. her eyes were open the whole time. G.B. told [Tyson] to leave her apartment. G.B. then went to a hospital for treatment.

**Tyson**, 119 A.3d at 356.

Prior to Tyson's trial, the Commonwealth filed a motion *in limine* seeking to introduce evidence of Tyson's 2001 rape conviction on the basis that the instant rape was part of a "common scheme or plan" and that Tyson's defense that he believed G.B. consented was less likely to be a mistake (*i.e.* absence of mistake exception). **Id**. The trial court declared Tyson's prior conviction inadmissible, and the Commonwealth filed an interlocutory appeal. On appeal, this Court reversed. First, this Court concluded that Appellant's prior rape conviction was relevant.

> Instantly, the record reveals the following factual similarities between the present case and [Tyson's] prior rape conviction. In each case, [Tyson] was acquainted with the victim—a black female in her twenties—and he was an invited guest in the victim's home. [Tyson] was aware that each victim was in a weakened or

- 8 -

compromised state. Each victim ultimately lost consciousness. In each case, the victim awoke in her bedroom in the early morning hours to find [Tyson] having vaginal intercourse with her. The evidence of [Tyson's] prior rape passes the basic relevance threshold, as it tends to increase the probability that [Tyson] knowingly had non-consensual sex with G.B. in the present case.

*Tyson*, 119 A.3d at 360 (citations omitted). With respect to the absence of

mistake exception, this Court concluded that

the trial court should have declared the evidence of [Tyson's] prior rape conviction admissible under the absence of mistake or accident exception to Rule 404. [Tyson] disputes G.B.'s account that she was asleep when [Tyson] initiated sexual intercourse with her—[Tyson] maintains he thought G.B. consented to the act. Given the relevant similarities between the two incidents, evidence of [Tyson's] prior rape would tend to prove he did not "mistakenly believe" G.B. was awake or gave her consent. [Tyson] was invited into G.B.'s home for another reason, [Tyson] knew G.B. was in a compromised state, and G.B. awoke to find [Tyson] having vaginal intercourse with her. [Tyson's] prior conviction would likewise show he had been invited into the home of an acquaintance, knew the victim was in a compromised state, and had [nonconsensual] sex with the victim while the victim was unconscious. The prior conviction would tend to prove [Tyson] was previously in a very similar situation and suffered legal consequences from his decision to have what proved to be nonconsensual vaginal intercourse with an unconscious victim. Thus, the evidence would tend to show [Tyson] recognized or should have recognized that, as with [his prior victim], G.B.'s physical condition rendered her unable to consent. The jury must have a chance to decide if [Tyson], in light of his past legal experience and conviction for a substantially similar criminal episode, could have reasonably concluded G.B.'s consent was possible under comparable circumstances.

… [C]ertain differences between the two incidents—such as the exact **reason** the victim was in a compromised state—are not essential to the question of whether [Tyson] mistakenly believed G.B. consented to sexual intercourse. The evidence of [Tyson's] prior crime is highly probative of the fact that [Tyson] could not have reasonably believed G.B. was conscious enough to give her consent. Rather, the evidence of the prior conviction tends to

- 9 -

prove [Tyson] intentionally exploited another opportunity to take advantage of a woman sexually, when he knew the woman was in a diminished state. The prior crime at issue fits within the absence of mistake or accident exception to Rule 404. Given the established similarity between the incidents, we conclude [Tyson's] prior conviction is highly probative on the issue of consent, but not so remote in time[3] or unduly prejudicial as to bar its admission under the absence of mistake or accident exception to Rule 404.

***Tyson***, 119 A.3d at 362-63 (citations omitted; emphasis in original).

In weighing the probative value of this prior conviction with the prejudicial effect of its admission, this Court opined as follows.

[T]he probative value of [Tyson's] prior conviction outweighs its potential for unfair prejudice. The prior conviction should not be shielded from the factfinder merely because it is harmful to [Tyson]; the question is whether evidence of [Tyson's] prior conviction would be unduly prejudicial. The substantial similarity between the two incidents gives the evidence of [Tyson's] previous crime considerable probative value. In light of the important similarities, the nature of [Tyson's] prior crime alone does not render it unduly prejudicial. ***See Commonwealth v. Frank***, [] 577 A.2d 609 ([Pa. Super.] 1990) (holding admission of evidence of [Frank's] prior sexual assaults of children under common plan exception was not unduly prejudicial where assaults possessed high degree of similarity and court issued cautionary instructions). Moreover, to alleviate the potential for unfair prejudice, the court can issue a cautionary instruction to the jury, to advise the jury of the limited purpose of the evidence and to clarify that the jury cannot treat the prior crime as proof of [Tyson's] bad character or criminal tendencies. Jurors are presumed to follow the trial court's instructions.

***Tyson***, 119 A.3d at 361–62 (some citations omitted; emphasis in original).

---

[3] Tyson's convictions were five years apart.

- 10 -

We now analyze the facts in the instant matter. First, as in **Tyson**, Appellant's conduct that led to his juvenile adjudication, specifically that he acknowledges having had sex with B.B. but claims he did not hear her say no, is relevant to prove similar circumstances in his rape of T.V. Appellant invited both B.B. and T.V. to his home and into his bedroom. There is no question as to his identity and both of his victims acknowledge intercourse occurred; the contested fact is whether this intercourse was consensual. T.V. and B.B. both claimed they said no. Appellant claimed that if they did, he did not hear them. As in **Tyson**, the evidence of the prior adjudication "passes the basic relevance threshold, as it tends to increase the probability that" Appellant knowingly had non-consensual sex with T.V. in this case. 119 A.3d at 360. Similarly, we agree that the absence of mistake exception applies in this case. As in **Tyson**, "[g]iven the relevant similarities between the two incidents, evidence of" Appellant's prior adjudication "tend to prove he did not 'mistakenly believe'" that T.V. did not say no. 119 A.3d at 362.

We now consider whether the trial court erred in concluding "the probative value of the evidence outweighs its potential for prejudice." Pa.R.E. 404(b)(3). Appellant argues that "the Commonwealth's need for corroborating evidence here is clearly distinguishable from the prosecution's need for corroborating evidence [in other cases], where the complainant either failed to [report promptly] the assault or there was simply a lack of corroborating evidence." Appellant's Brief at 33-34.

In this case, there were text messages between Appellant and T.V. corroborating **both** of their stories, namely that T.V. said no and that Appellant claimed he did not hear her. Thus, evidence that Appellant had utilized this defense under similar circumstances is certainly probative. Accordingly, we hold the trial court did not abuse its discretion.

However, we still must consider whether its admission was "**unduly** prejudicial." *Commonwealth v. Gordon*, 673 A.2d 866, 870 (Pa. 1996) (emphasis in original); *Commonwealth v. Diehl*, 140 A.3d 34, 41 (Pa. Super. 2016)("The admission of evidence becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial.").

We recognize rape is a heinous crime that could and should inflame the passions of a jury. However, the details of these crimes are not such that it was an error of law or abuse of discretion for the trial court to believe a jury would be unable to look past the details of the crime and to consider Appellant's prior adjudication only for the purpose for which it was permitted. In fact, the trial court provided two specific cautionary instructions to the jury, pointing out the limited purpose for which this evidence could be considered. "[A] cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014). "Jurors are presumed to follow the trial court's instructions." *Id*.

Accordingly, recognizing that evidence of this nature is always prejudicial, based on the facts of this case, we conclude that it was not unduly prejudicial here. Thus, the trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2018