J-S44009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANE MULHERN | : | |
| | : | |
| Appellant | : | No. 687 EDA 2018 |

Appeal from the Judgment of Sentence December 22, 2015
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002906-2012,
CP-09-CR-0002926-2012

BEFORE: LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 17, 2018**

Shane Mulhern appeals *nunc pro tunc* from the judgment of sentence, entered in the Court of Common Pleas of Bucks County, after he violated his probation after pleading guilty to accidents involving death or personal injury, 75 Pa.C.S.A. § 3742(a), theft by unlawful taking, 18 Pa.C.S.A. § 3921(a), and related charges.[1]  After review, we affirm.

The trial court summarized the factual history of this case as follows:

> On June 18, 2012, [Mulhern] plead[ed] guilty to [a]ccidents [i]nvolving [d]eath or [p]ersonal [i]njury, [t]heft by [u]nlawful [t]aking, and other related charges.  As a result, the Honorable Rea B. Boylan . . . sentenced [Mulhern] to serve not less than one (1) year, nor more than two (2) years, in a [s]tate [c]orrectional

---

[1] Unauthorized use of a motor vehicle, 18 Pa.C.S.A. § 3928(a); theft of property lost, mislaid or delivered by mistake, 18 Pa.C.S.A. § 3924; and driving while operating privileges suspended or revoked, 75 Pa.C.S.A. § 1543(a).

[i]institution, with a consecutive term of thirty-six (36) months of probation. [Mulhern] concluded serving his term of confinement as of June 18, 2014, whereupon he began serving his term of probation.

Gabe Dominguez was assigned as [Mulhern's] probation officer for his thirty-six (36) month probation term. [Probation Officer] Dominguez first visited [Mulhern] on June 24, 2014 and conducted a urine analysis test, which revealed that [Mulhern] was positive for [m]arijuana. [Mulhern] was given a warning at that time. [Probation Officer] Dominguez [again] tested [Mulhern] on July 23, 2014, [and] [Mulhern] again tested positive for marijuana.

[Probation Officer] Dominguez continued to test [Mulhern] at regular intervals. On August 6, 2014 and August 19, 2014, [Mulhern] tested positive for marijuana and cocaine both times. [Mulhern] again tested positive for marijuana on September 9, 2014. After a conference with supervisors on September 12, 2014, [Mulhern] was placed on GPS monitoring.

On September 24, 2014, [Probation Officer] Dominguez observed [Mulhern's] behavior during a group therapy session at a [Treatment Accountability for Safer Communities (")TASC[")] program[,] where [Mulhern] humorously commented about purchasing marijuana from Colorado and having it sent via courier to Pennsylvania. In [Probation Officer] Dominguez's view, [Mulhern] exhibited behavior inconsistent with someone trying to overcome drug addiction. Later that same date, [Mulhern] tested positive for marijuana and cocaine, but was again given a warning. [Mulhern] [again] tested positive for marijuana and cocaine on October 7, 2014 and October 10, 2014.

Trial Court Opinion, 3/20/18, at 1-2 (citations to record omitted).

On November 6, 2014, the trial court held a **Gagnon I**[2] hearing to determine whether probable cause existed to support the conclusion that

_____

[2] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973) (previously sentenced probationer is entitled to preliminary and final revocation hearings); **see also Morrissey v. Brewer**, 408 U.S. 471 (1972) (parolee is entitled to minimum due process protections because of possible deprivation of liberty inherent in parole revocation proceedings).

Mulhern violated his probation. Following a **Gagnon II** hearing on December 22, 2014, the trial court sentenced Mulhern to fifteen to thirty-six months' imprisonment with a recommendation that Mulhern serve his sentence in a therapeutic community. On December 31, 2014, Mulhern filed a motion for reconsideration of sentence, which the trial court denied the same day. Mulhern filed two subsequent untimely notices of appeal, which this Court quashed.

On May 18, 2015, Mulhern filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, after which the trial court granted Mulhern leave to filed a direct appeal *nunc pro tunc*. Mulhern filed a direct appeal *nunc pro tunc* and the trial court, on October 12, 2017, complied with Pa.R.A.P. 1925(a). However, this Court dismissed Mulhern's appeal for failure to comply with Pa.R.A.P. 3517.[3] Mulhern filed another PCRA petition on January 31, 2018, alleging ineffective assistance of counsel. The trial court again granted Mulhern leave to file a direct appeal *nunc pro tunc.* On February 26, 2018, Mulhern filed the instant appeal *nunc*

_____

[3] Rule 3517 provides as follows:

> Whenever a notice of appeal to the Superior Court is filed, the Prothonotary shall send a docketing statement form which shall be completed and returned within ten (10) days in order that the Court shall be able to more efficiently and expeditiously administer the scheduling of argument and submission of cases on appeal. Failure to file a docketing statement may result in dismissal of the appeal.

Pa.R.A.P. 3517.

*pro tunc*.   Both parties have complied with Pa.R.A.P. 1925.   On appeal, Mulhern raises the following issue for our review:

> Was the trial court's sentence of December 22, 2014, of not less than fifteen (15) months nor more than thirty-six (36) months of total confinement, as a result of technical violations of parole and/or probation, an abuse of discretion in that the reasons for the sentence were not appropriately explained and placed upon the record, the sentence was not supported by the facts of the case, and [Mulhern] was not offered or permitted to exercise his right of allocution?

Brief of Appellant, at vi.

Mulhern's sole claim on appeal challenges the discretionary aspects of his sentence.   Before we reach the merits of Mulhern's discretionary aspects of sentence claim, we must first determine whether this Court has jurisdiction in this case.   It is well-settled that in order to invoke this Court's jurisdiction when raising a challenge to the discretionary aspects of a sentence, an appellant must:   (1) file a timely appeal; (2) preserve the issue he or she wishes to present on appeal; (3) include in his or her brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence pursuant to Pa.R.A.P. 2119(f); and (4) present a substantial question in his or her concise statement that the sentence is not appropriate under the Sentencing Code.[4]  ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013).   An appellant must satisfy all four requirements. ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013).

---

[4] 42 Pa.C.S.A. §§ 9701 - 9799.75.

Instantly, Mulhern has filed a timely notice of appeal *nunc pro tunc* and has preserved his discretionary challenge by way of a post-sentence motion for reconsideration of sentence. Mulhern has also included in his brief a Rule 2119(f) concise statement of reasons for allowance of appeal. Having determined Mulhern has satisfied the necessary procedural dictates, our analysis turns to whether he has raised a substantial question that his sentence is inappropriate under the Sentencing Code. *See* Brief of Appellant, at 6-7.

We determine the existence of a substantial question on a case-by-case basis. A substantial question exists only when

> the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists.

*Commonwealth v. Diehl*, 140 A.3d 34, 44–45 (Pa. Super. 2016) (internal citations and quotation marks omitted).

Mulhern, in his Rule 2119(f) statement, avers that the trial court abused its discretion in imposing a sentence of total confinement for technical violations of probation where it failed to state on the record its reason for imposing his sentence and denied him his right of allocution.

> The Sentencing Code reveals that the legislature has given particular consideration to the appropriateness of sentences of total confinement following revocation of probation. *See* 42 Pa.C.S.A. § 9771. *On appeal from a revocation proceeding, we*

*find a substantial question is presented when a sentence of total confinement, in excess of the original sentence, is imposed as a result of a technical violation of parole or probation*.

**Commonwealth v. Sierra**, 752 A.2d 910, 913 (Pa. Super. 2000) (emphasis added).

Instantly, in his Rule 2119(f) statement, Mulhern presents a plausible argument that the trial court violated the fundamental norms underlying the sentencing process. Specifically, Mulhern argues the trial court abused its discretion in imposing a sentence of total confinement for technical violations of probation. **Sierra**, 752 A.2d at 913 (stating that substantial question is presented when probation revocation sentence of total confinement, in excess of original sentence, is imposed as result of technical violation of parole or probation).[5] Therefore, we proceed with a review of Mulhern's issue on its merits.

The imposition of sentence following the revocation of probation is vested within the sound discretion of the probation revocation court, which, absent an abuse of discretion, will not be disturbed on appeal. **Id.** A court may sentence a defendant to total confinement subsequent to revocation where any of the following conditions exist:

---

[5] We observe that technical violations can be sufficient to trigger the revocation of probation. **See Commonwealth v. Infante**, 888 A.2d 783, 791 (Pa. 2005) ("[T]he reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, . . . [a] probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." (citation omitted)).

1. the defendant has been convicted of another crime; or

2. *the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned*; and

3. such a sentence is essential to vindicate the authority of this court.

*Id.* at 1283 (emphasis added). When imposing a sentence of total confinement after a probation revocation, the sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender. *Id.*

Here, the trial court revoked Mulhern's probation after he repeatedly failed drug tests (i.e., violated technically the terms of his probation) despite multiple warnings from Probation Officer Dominguez. Mulhern tested positive for every drug test administered following his release from prison. Furthermore, the trial court adequately stated on the record its reasons for its sentence, stating, in relevant part:

> The problem I have is that almost immediately after you were released you started using drugs, marijuana, then cocaine, and you had to know your parole officer was going to stop by and test you month in and month out. . . . Every month you had an appointment or visit from your probation officer and he tested you[,] you were positive, and it[ is] almost as if you completely disregarded his warnings.
>
> . . .
>
> You need treatment[.] . . . I[ am] recommending a therapeutic community. . . . You need to get the drugs straightened out.

I wish I could do what you asked me to do, . . . but I think somebody who tests positive monthly after being given warnings, being told you are going back if you [do not] stop, just [cannot] stop.

N.T. Probation Revocation Hearing, 12/22/14, at 10-12. **Sierra**, **supra**.

Moreover, contrary to Mulhern's recitation of the facts, the trial court provided Mulhern with an opportunity to exercise his right to allocution. Prior to sentencing, the court must inform the defendant of his right to allocute (i.e., a chance to address the court). Pa.R.Crim.P. 708(D)(1) ("At the time of sentencing, the judge shall afford the defendant the opportunity to make a statement on his or her behalf and shall afford counsel for both parties the opportunity to present information and argument relative to sentencing.").

The trial court gave Mulhern the opportunity to allocute, which he did:

TRIAL COURT: Anything else you want to say?

MULHERN: Yes, there is. Just that I really have no life and I really [have] been trying to get back to school. I was accepted to the Harris School of Business, this [is] new information, I did[ not] know much about it. I[ am] maxing out from State Prison, I asked my grandmother what my grandfather [did], she told me he worked for the Federal Government[.] He died from Legionnaires' [d]isease, [which] made me want to make an impact for once.

N.T. Probation Revocation Hearing, 12/22/14, at 9-10. Moreover, in its Rule 1925(a) opinion, the trial court indicated that it considered Mulhern's statement in determining his sentence.[6]

_____

[6] Mulhern baldly asserts, with no citation to relevant case law, that although the trial court permitted him to exercise his right to allocution, its gesture does not satisfy the constitutional requirement that it inform him, on the record, of

Our review of the record confirms that the trial court stated its reasons for revoking Mulhern's probation at sentencing and granted him an opportunity to exercise his right of allocution. In light of the foregoing, we do not discern that the trial court abused its discretion in revoking Mulhern's probation and sentencing him to a term of total confinement.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 8/17/2018*

---

his right to allocution. However, since Mulhern, in fact, did speak on his own behalf at sentencing, we find this claim meritless; the record does not support that he was deprived of his constitutional right to allocution.