J-S39014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID CHARLES HEATHCOTE | : | |
| | : | |
| Appellant | : | No. 24 WDA 2024 |

Appeal from the Judgment of Sentence Entered December 12, 2023
In the Court of Common Pleas of Venango County Criminal Division at
No(s):  CP-61-CR-0000677-2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: February 21, 2025**

Appellant, David Charles Heathcote, appeals from the December 12, 2023 judgment of sentence entered by the Venango County Court of Common Pleas following his conviction for Murder in the Third Degree.  Appellant challenges the discretionary aspects of his sentence, asserts that the Commonwealth violated **Brady v. Maryland**,[1] and contests the trial court's denial of a "heat of passion" jury instruction.  After review, we affirm the judgment of sentence.

At approximately 6:00 PM on October 29, 2022, Robert Wingard ("Victim") died from a shotgun wound to his right jaw while sitting in his pick-up truck in Appellant's driveway.  At approximately 8:00 PM, Appellant called 911 to report that he shot the Victim in a "self-defense shooting."  Affidavit of

_____

[1] 373 U.S. 83 (1963)

Probable Cause, 10/30/22. The Commonwealth initially charged Appellant with Murder in the First Degree but subsequently amended the information during trial to add a count of Murder in the Third Degree.

The trial court presided over Appellant's jury trial from November 13-15, 2023. As discussed in detail below, the Commonwealth presented the testimony of Dr. Eric Vey, a forensic pathologist, who performed an autopsy on the Victim. Over defense counsel's repeated objection, Dr. Vey opined that the shotgun had been fired when the muzzle was two to four feet from the Victim, an opinion which he had not included in his autopsy report provided to the defense. Dr. Vey's opinion conflicted with Appellant's assertion that he was approximately eleven feet from the Victim when he fired the gun.

Appellant testified in his own defense. Appellant claimed that the Victim drove into his driveway and accused Appellant of "ruining his bow hunt." N.T., 11/14/23, at 75. Appellant testified that he told the Victim that he had the Victim's trail camera and accused the Victim of pointing it toward the area where Appellant's adult daughter often urinated when hunting with Appellant. *Id.* at 76. Appellant asserted that, when he threated to turn the camera over to police, the Victim responded by threatening to "shoot [Appellant's] dogs [who were barking nearby] if they peed on his tires and shoot [Appellant's daughter] on his way home." *Id.* at 80-81. Appellant claimed that when he told the Victim that he was going to call police, the Victim said "the fuck you are" and reached "to the right[.]" *Id.* Appellant admitted that the truck's passenger door blocked him from seeing what the Victim was reaching toward.

- 2 -

*Id.* at 81-82.  Appellant testified that he "panicked, and next thing [he knew,] the shots [were] already going off." *Id.* at 82.  Appellant stated that he called his sister after the shooting, a call which he made at approximately 6:30 PM before calling 911 at 8:00 PM.

The trial court instructed the jury as to Murder in the First and Third degrees as well as Voluntary Manslaughter-unreasonable mistaken self-defense but denied Appellant's request for an instruction on Voluntary Manslaughter-Heat of Passion.  On November 15, 2023, the jury convicted Appellant of Murder in the Third Degree.[2]

On December 12, 2023, the trial court sentenced Appellant to 18 to 40 years of incarceration.  In imposing the sentence, the court indicated that it considered Appellant's "age, his history and all the information contained in the Pre-Sentence Investigation Report[("PSI");]" "the Psychological Evaluation and all the statements written on his behalf by his family and friends[;]" and Defendant's in-court statement and his counsel's arguments. Sentencing Order, 12/12/23.  The court also noted its consideration of "the numerous detailed statements made by family, friends and coworkers of the [V]ictim," as well as the "[t]he argument of the District Attorney, the sentencing guideline and all other relevant factors[.]" *Id.*

Appellant filed a post-sentence motion, challenging the sentence as excessive.  The trial court denied the motion on December 28, 2023.  On

---

[2] 18 Pa.C.S. § 2502(c).

January 2, 2024, Appellant filed a notice of appeal, and Appellant and the court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. The sentence in this case was manifestly excessive and clearly unreasonable in that the court handed down a sentence at the highest end of the the [*sic*] standard range of the sentencing guidelines.

2. The court erred in allowing Dr. Eric Vey to testify to the distance between the muzzle of the gun and the victim, which was not included in a report provided by the Commonwealth to the Defense, thereby violating the standards set forth in **Brady v. Maryland** and prohibiting the defense from being able to present any testimony, witness, or other evidence regarding this conclusion.

3. The court abused its discretion in denying the "heat of passion" jury instruction requested by the defense as part of the voluntary manslaughter instruction.

Appellant's Br. at 2.

Appellant first challenges the discretionary aspects of his sentence. Appellant's Br. at 4-8. "Challenges to the discretionary aspects of sentence are not appealable as of right." **Commonwealth v. Miller**, 275 A.3d 530, 534 (Pa. Super. 2022). Rather, an appellant must satisfy each of the following four requirements to invoke this Court's jurisdiction:

> (1) fil[e] a timely notice of appeal; (2) properly preserv[e] the issue at sentencing or in a motion to reconsider and modify the sentence; (3) comply[] with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) present[] a substantial question . . . .

**Id.**

- 4 -

The record reflects that Appellant satisfied the first three requirements. Accordingly, we consider whether he has raised a substantial question, which requires a "case-by-case" determination based solely upon "the statement of questions presented and the prefatory 2119(f) statement[.]" *Commonwealth v. Diehl*, 140 A.3d 34, 44-45 (Pa. Super. 2016) (citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms [that] underlie the sentencing process." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation and quotation marks omitted). A bald or "generic claim that a sentence is excessive does not raise a substantial question for our review." *Commonwealth v. Andrews*, 213 A.3d 1004, 1017 (Pa. Super. 2019) (citation omitted). Indeed, where a sentencing court has the benefit of a presentence investigation report and imposes a sentence in the standard range, an appellate court cannot consider the sentence "excessive or unreasonable[,]" "absent more." *Moury*, 992 A.2d at 171.

In this case, we conclude that Appellant has not presented a substantial question. Rather, in his stated question, Appellant merely asserts that his sentence was "manifestly excessive and clearly unreasonable[,]" because it was at "the highest end of the[] standard range of the sentencing guidelines." Appellant's Br. at 2. In his Rule 2119(f) statement, he claims that the "fundamental norm violated was that the sentence was manifestly excessive

in that it was not individualized" and was "clearly unreasonable." Appellant's Br. at 5 (quoting 42 Pa.C.S. § 9781). To support this claim, Appellant merely states that "a lesser period of confinement could achieve the goals of the protection of the public and the rehabilitative needs of the defendant." Appellant's Br. at 6. Appellant's circular assertions that his sentence was excessive and unreasonable, without more, do not raise a substantial question where the trial court imposed a sentence within the standard range after considering the PSI.[3]

\*

In his second issue, Appellant asserts that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to inform defense counsel pre-trial of Dr. Vey's conclusions regarding the distance between the shotgun muzzle and the Victim. Appellant's Br. at 8-10.

As set forth above, Dr. Vey testified regarding his autopsy, providing a detailed description of the Victim's fatal shotgun wound. Defense counsel objected when the Commonwealth began to question Dr. Vey regarding the distance between the shotgun's muzzle and the wound. N.T., 11/14/23, at 23-24. Defense counsel asserted that they were being "ambush[ed]" by this testimony, stating that they would have hired an expert to address this testimony. *Id.* at 24-25. The court overruled the objection.

---

[3] The trial court explained that, based upon Appellant's prior record score of zero, the standard range sentence for Murder in the Third Degree was 72 months to 20 years, with a statutory limit of 40 years. Trial Ct. Op. at 3.

Defense counsel reiterated the objection and requested a mistrial, when the Commonwealth sought to admit Dr. Vey's report. *Id.* at 32. While the court denied a mistrial, it granted counsel a brief recess to prepare for cross-examination. *Id.* at 34-36. On cross-examination and redirect examination, Dr. Vey stated that he based his conclusion on standard treatises that he read the night before in preparation for testifying, and he asserted that he had not discussed these conclusions with the Commonwealth. *Id.* at 39-40, 45. Moreover, he acknowledged that ballistics testing of Appellant's 1950's shotgun would provide a more accurate method of determining the distance, testing which had not been done in this case. *Id.* at 43-44.

On appeal, Appellant claims that the court's admission of Dr. Vey's testimony regarding the distance violated **Brady** because the Commonwealth failed to disclose Dr. Vey's conclusions to the defense prior to trial. Appellant's Br. at 8-10. Appellant maintains that he would have incorporated this information into his defense strategy, especially in light of Appellant's contrary testimony that he shot the Victim from up to eleven feet away. *Id.* at 9-10. Appellant claims that the trial court should have imposed sanctions on the prosecution for the **Brady** violation under Pa.R.Crim.P. 573(E), which includes prohibiting admission of the relevant testimony or evidence.

A **Brady** claim "presents a question of law, for which our standard of review is *de novo*[,] and our scope of review is plenary." **Commonwealth v. Bagnall**, 235 A.3d 1075, 1084 (Pa. 2020). "**Brady** imposes upon the Commonwealth an affirmative duty to disclose to the defendant all favorable

evidence material to guilt or punishment, even in the absence of a request by the defendant for the same[.]" ***Commonwealth v. Thomas***, 323 A.3d 611, 638–39 (Pa. 2024) (citations omitted). "A ***Brady*** violation occurs when: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the prosecution, even if inadvertently; and (3) the evidence is material." ***Commonwealth v. Dowling***, 316 A.3d 32, 42 (Pa. 2024).

We agree with the trial court that Appellant fails to establish a ***Brady*** claim. First, Appellant has not satisfied the first ***Brady*** requirement that the evidence be favorable to the defense. Dr. Vey's testimony is not favorable to Appellant as it is neither exculpatory nor impeachment evidence. Rather, the evidence is contrary to Appellant's testimony and his theory of self-defense, which was based on him being unable to see if the Victim was reaching for a gun. Additionally, as noted by the trial court, Appellant fails to demonstrate that the Commonwealth suppressed this evidence, given that Dr. Vey testified that he came to his conclusions the night before his testimony after reading treatises and without speaking to the Commonwealth. Trial Ct. Op. at 7-8. Accordingly, Appellant's ***Brady*** claim fails.

\*

In his final issue, Appellant contends that the trial court erred in denying Appellant's request to provide a Voluntary Manslaughter-"heat of passion" jury instruction. Appellant's Br. at 10-12. "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate

court will reverse a court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Galvin***, 985 A.2d 783, 798-99 (Pa. 2009). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." ***Commonwealth v. Antidormi***, 84 A.3d 736, 745 (Pa. Super. 2014) (citation omitted).

"The trial court is not required to give every charge that is requested by the parties[,] and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." ***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted). As specifically relevant to a 'heat of passion" voluntary manslaughter instruction, the Supreme Court provided the following guidance:

> A voluntary manslaughter instruction is warranted only where the offense is at issue and the evidence would support such a verdict. To support a verdict for voluntary manslaughter, the evidence would have had to demonstrate that, at the time of the killing, [the] appellant acted under a sudden and intense passion resulting from serious provocation by the victim. If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway[—]the killing will be murder.

***Commonwealth v. Sanchez***, 82 A.3d 943, 979–80 (Pa. 2013) (citations and quotation marks omitted). "Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective

test: whether a reasonable man who was confronted with the provoking events would become impassioned to the extent that his mind was incapable of cool reflection." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 314–15 (Pa. 2011) (citations and quotation marks omitted). Additionally, the Supreme Court has held that "[t]he threatened or **immediate** infliction of serious injury upon a parent, spouse or child because of the relationship of the parties and the expected concern of one for the well being of the other, has occasioned courts to hold this conduct may be sufficient provocation to reduce the killing to voluntary manslaughter." ***Commonwealth v. Berry***, 336 A.2d 262, 264 (Pa. 1975) (emphasis added).

Appellant claims that the trial court erred in failing to include his requested heat of passion jury instruction, in light of the "[V]ictim's threats to shoot the defendant's daughter and his dogs[.]" Appellant's Br. at 11. Appellant argues that "[t]he immediacy of the situation led" Appellant to conclude that "he needed to shoot the [V]ictim in order to stop him from potentially harming his daughter," who "lived in the area, [] was on the autism spectrum[,] and was legally blind." ***Id.*** at 12. He claims that the instruction should have been given in this case where "his defense was one of mitigation of the act which naturally includes a heat of passion defense." ***Id.***

After review, we conclude that the trial court did not abuse its discretion in declining to include a heat of passion jury instruction. As the trial court opined, the Victim's alleged threat did "not present the kind of immediacy of harm and resultant sudden passion relative to the time of the homicide that

could reduce the degree of guilt to voluntary manslaughter." Trial Ct. Op. at 10 (emphasis omitted). Specifically, the court noted that Appellant's daughter was "not present at the scene and lived 12-15 miles away." *Id.* Moreover, the court emphasized that the record did not reflect that the Victim knew where Appellant's daughter lived, "which placed her out of imminent danger[,]" such that a heat of passion defense was not supported by the record. *Id.* The trial court's reasoning is sound, and we discern no abuse of discretion. Thus, as with Appellant's first two issues, this issue warrants no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/21/2025